UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| A.S., an individual,[1] | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:23-CV-1039-B |
| | § | |
| SALESFORCE, INC., BACKPAGE.COM, | § | |
| LLC, and CARL FERRER, | § | |
| | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Salesforce, Inc. ("Salesforce")'s Motion for Judgment on the Pleadings (Doc. 41). For the following reasons, the Court **GRANTS** the Motion. The Court **DISMISSES** Plaintiffs' Chapter 98 claims against Salesforce **WITHOUT PREJUDICE**.

### I.

### BACKGROUND

Plaintiffs are sex-trafficking victims. Plaintiffs claim that their individual traffickers advertised and sold them for sex on Defendant Backpage.com, LLC ("Backpage")'s online platform. Doc. 1-5, Pet., ¶ 113. They further claim that Salesforce provided Backpage with the technology and services needed to expand Backpage's illicit business and evade detection from law enforcement. *Id.* ¶ 114.

---

[1] On June 20, 2023, the Court consolidated the following cases with the above entitled cause: 3:23-CV-1040-B; 3:23-CV-1042-B; 3:23-CV-1044-B; 3:23-CV-1045-B; 3:23-CV-1046-B; 3:23-CV-1047-B; 3:23-CV-1048-B; 3:23-CV-1049-B; 3:23-CV-1050-B; 3:23-CV-1051-B; 3:23-CV-1052-B; 3:23-CV-1056-B; 3:23-CV-1057-B; 3:23-CV-1058-B; 3:23-CV-1059-B; 3:23-CV-1071-B; 3:23-CV-1110-B; 3:23-CV-1122-B; 3:23-CV-1352-B; 3:23-CV-1353-B. *See* Doc. 11, Mem. Op. & Order, 5–7. This case was designated as the lead case. *Id.* at 6.

Backpage was an online marketplace used by sex traffickers to advertise and sell individuals, including Plaintiffs, for sex acts. *Id.* ¶¶ 6, 61–62, 115. From 2013 to 2015, "Backpage earned over 99% of its revenue from adult ads, a substantial percentage of which came directly from on-line prostitution and sex trafficking." *Id*. ¶ 9. Specifically, sex traffickers used Backpage to "post" particular victims for sale, which enabled traffickers to "reach entirely new audiences, evade law enforcement, and maintain control of victims by transporting them quickly between locations thus maximizing profits far beyond traditional trafficking methods." *Id.* ¶¶ 60, 115. Since 2008, "Backpage . . . had been publicly identified by law enforcement, United States Attorneys General, and every United States Governor as the biggest and most notorious sex trafficking and prostitution promoting website in the United States." *Id.* ¶ 61.

In 2013, Backpage had difficulty scaling its operations "without operational support, marketing innovation, and guidance." *Id.* ¶ 64. Backpage thus sought out a partner that could "assist the vision of its growth as the leader in online sex sales as well as concealing such activity." *Id.* Backpage allegedly found such a partner in Salesforce. *See id.* ¶ 65. From 2013 to 2018, Salesforce and Backpage entered into a series of contracts, which allegedly "made possible the exponential growth of Backpage's business, sex trafficking[,] and the selling of sex." *Id.* Specifically, Salesforce's representatives allegedly worked with Backpage to build out Backpage's CRM software in order "to promote, develop, and grow its internet based online selling of sex, sex trafficking, and compelled prostitution." *Id.* ¶ 83.

Plaintiffs claim that they were trafficked through Backpage with the help of Salesforce's technology and services. *See id.* ¶¶ 113–17. According to Plaintiffs, Salesforce's software enabled "Backpage [to] collect[] detailed and in-depth customer data about the sex traffickers using Backpage,

monitor[] data about sex traffickers, streamlin[e] communications with those sex traffickers, and market[] . . . to sex traffickers." *Id.* ¶ 131.

Plaintiffs asserts claims under Chapter 98 of the Texas Civil Practice and Remedies Code against each Defendant. *Id.* ¶¶ 118–67. As relevant this Order, Plaintiffs claim that Salesforce is liable under Chapter 98 because it knowingly benefited from its participation in a venture that trafficked Plaintiffs. *Id.* ¶¶ 122–33.

The Court previously granted in part and denied in part Salesforce's Motion to Dismiss under Rules 12(b)(2) and 12(b)(6). Doc. 35, Mem. Op. & Order, 1. Salesforce then filed a Motion for Judgment on the Pleadings under Rule 12(c), arguing that Plaintiffs failed to allege that Salesforce had actual knowledge of their trafficking. Doc. 41, Mot., 1. Salesforce did not raise this argument in its original Motion to Dismiss. The Court considers the Motion below.

## II.

## LEGAL STANDARD

A party may move for judgment on the pleadings after the pleadings are closed and when doing so would not delay the trial. FED. R. CIV. P. 12(c). A Rule 12(c) motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990). A motion for judgment on the pleadings is reviewed under the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (*citing In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).

In analyzing a motion to dismiss for failure to state a claim under Rule 12(b)(6), "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205 (internal quotations omitted). A Rule 12(b)(6) motion to dismiss should be granted only if the complaint does not include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). But a complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

### III.

### ANALYSIS

The Court grants Salesforce's Motion for Judgment on the Pleadings. First, the Court concludes that Salesforce's Motion for Judgment on the Pleadings is procedurally proper. Next, the Court finds that Plaintiffs failed to state a claim under Chapter 98 of the Texas Civil Practice and Remedies Code. Lastly, the Court grants Plaintiffs leave to amend their Chapter 98 claim.

A.    *Salesforce's Motion for Judgment on the Pleadings is Procedurally Proper.*

The Court will consider Salesforce's Motion because it is procedurally proper. Plaintiffs argue that Salesforce's Motion for Judgment on the Pleadings is procedurally improper because Salesforce previously filed a Rule 12(b)(6) Motion to Dismiss. Doc. 71, Resp., 3–4. But the Federal

Rules of Civil Procedure and Fifth Circuit precedent indicate that Salesforce is allowed to file a 12(c) motion even though Salesforce previously filed a 12(b)(6) motion.

First, the Federal Rules of Civil Procedure permit parties to file a Rule 12(c) motion for judgment on the pleadings even if they have already filed a Rule 12(b) motion. Although Rule 12(g)(2) prohibits parties from filing multiple Rule 12 motions, FED. R. CIV. P. 12(g)(2), Rule 12(h)(2) excepts—among other things—Rule 12(c) motions arguing that the plaintiff failed to state a claim, FED. R. CIV. P. 12(h)(2)(B). Thus, the Federal Rules of Civil Procedure do not bar Salesforce from filing a Rule 12(c) motion on the basis that Plaintiffs failed to state a claim, even though Salesforce could have raised this argument in its first Motion to Dismiss.

Next, Fifth Circuit precedent suggests that Salesforce can file a 12(c) motion even though Salesforce previously filed a Rule 12(b)(6) motion to dismiss. In *Doe v. Columbia-Brazoria Independent School District by & through Board of Trustees*, a district court denied without prejudice a defendant's first motion to dismiss. 855 F.3d 681, 685 (5th Cir. 2017). The defendant later filed a second 12(b)(6) motion to dismiss for failure to state a claim, which the district court granted. *Id.* The Fifth Circuit held that, even if the Federal Rules of Civil Procedure did not allow the defendant to file a second Rule 12(b)(6) motion to dismiss, "the [defendant] could have presented that same argument in a Rule 12(c) motion for judgment on the pleadings, which Rule 12(h) does not prohibit." *Id.* at 686. Thus, the Fifth Circuit held that the defendant could have filed a 12(c) motion even though it previously moved to dismiss under Rule 12(b)(6). *Id.*

Plaintiffs contend that Federal Rule of Civil Procedure 12(g)(2) prevents Salesforce from filing its Rule 12(c) Motion for Judgment on the Pleadings to assert a second failure to state a claim defense. Doc. 71, Resp., 4. They argue that Rule 12(h) only allows a defendant to assert a failure to

state a claim defense in a Rule 12(c) motion if the defendant "omits a defense for failure to state a claim" from its initial Rule 12 motion. *Id.* However, the text of Rule 12(h)(2) does not include this limitation. Instead, Rule 12(h)(2)(b) simply says that a "[f]ailure to state a claim upon which relief can be granted . . . defense . . . may be raised . . . by a motion under Rule 12(c)." FED. R. CIV. P. 12(h)(2)(B). Thus, Rule 12(g)(2) does not prevent Salesforce from filing a Rule 12(c) motion even though Salesforce argued that Plaintiffs failed to state a claim in a Rule 12(b)(6) motion.

Plaintiffs next argue that allowing Salesforce to raise new arguments in a 12(c) motion "multiplies the motion practice in a case, creates substantial delay, and needlessly wastes party and judicial resources." Doc. 71, Resp., 5. But Rule 12(h) and Fifth Circuit precedent expressly allow Salesforce to file its 12(c) Motion. And the Court is aware of no authority that prevents Salesforce from filing a 12(c) motion after filing a 12(b)(6) motion to dismiss for failure to state a claim.

Plaintiffs then attempt to distinguish this case from *Columbia-Brazoria Independent School District* by arguing that the district court there did not consider the merits of the defendant's first motion to dismiss, while the Court here addressed the merits of Salesforce's Motion to Dismiss. Doc. 71, Resp., 6. While this distinction is accurate, the Fifth Circuit's ruling did not rely on the fact that the district court summarily denied the defendant's first motion to dismiss. *See Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d at 686. Instead, the Fifth Circuit solely relied on the text of Rule 12(h) to conclude that the defendant could have raised its failure to state a claim defense in a Rule 12(c) motion. *Id.* Accordingly, the Court concludes that Salesforce's Rule 12(c) Motion for Judgment on the Pleadings is procedurally proper.

B.    *Plaintiffs Failed to State a Claim Under Texas Civil Practice and Remedies Code § 98.002(a).*

Plaintiffs' only remaining claim against Salesforce is their claim under Chapter 98 of the Texas Civil Practice and Remedies Code, the Texas statute prohibiting human trafficking. Section 98.002(a) imposes civil liability on any "defendant who engages in the trafficking of persons or who intentionally or knowingly benefits from participating in a venture that traffics another person." TEX. CIV. PRAC. REM. CODE § 98.002(a). The Court previously ruled that Plaintiffs adequately alleged that Salesforce participated in a venture, as necessary to maintain a claim for participant liability under Chapter 98. Doc. 35, Mem. Op. & Order, 17. Salesforce now argues in its Motion for Judgment on the Pleadings that Plaintiffs have failed to allege that Salesforce had actual knowledge that Plaintiffs were trafficked. Doc. 42, Br. Mot., 9.

 The Court holds that Chapter 98 creates three different "provisions" of civil liability. The first two provisions create liability for conduct that constitutes a criminal offense under Chapter 20A of the Texas Penal Code. The third provision creates civil liability when a defendant participates in a venture that traffics a plaintiff but where the defendant does not violate Chapter 20A. The Court then finds that Plaintiffs have failed to allege that Salesforce had actual knowledge of their trafficking as necessary to state a claim under the second provision of Chapter 98.

1.    Chapter 98 Has Three "Provisions."

Before addressing whether Plaintiffs stated a claim under § 98.002(a), the Court must first establish what conduct is regulated by the statute. The Court previously interpreted this statute in a related case: *Doe (S.M.A.) v. Salesforce, Inc.*, No. 3:23-CV-0915-B, 2025 WL 888433, at *8 (N.D. Tex. Mar. 21, 2025) (Boyle, J.). Here, the Court again holds that § 98.002(a) effectively contains three provisions that each create a cause of action. The first two provisions provide a civil cause of action

if the defendant violates Chapter 20A of the Texas Penal Code, while the third provision provides a cause of action in cases where a defendant participates in a venture that traffics another person but where the defendant is not accused of violating Chapter 20A.

Section 98.002(a) imposes civil liability on any "defendant who engages in the trafficking of persons or who intentionally or knowingly benefits from participating in a venture that traffics another person." TEX. CIV. PRAC. REM. CODE § 98.002(a). For the following reasons, the Court holds that § 98.002(a) applies to a defendant who (1) knowingly traffics another person and forces them to engage in certain prohibited conduct, (2) "intentionally or knowingly benefits from participating in a venture that traffics another person" and forces them to engage in certain prohibited conduct, or (3) "intentionally or knowingly benefits from participating in a venture that traffics another person." *See id.* Thus, the statute has three provisions that each create civil liability: (1) a direct criminal provision, (2) a criminal participant provision, and (3) a civil participant provision.

First, the "trafficking of persons" language in § 98.002(a) creates the direct criminal and criminal participant provisions because § 98.001 defines "trafficking of persons" as "conduct that constitutes an offense under Chapter 20A, Penal Code." *Id.* § 98.001. Chapter 20A of the Texas Penal Code makes it a criminal offense to knowingly traffic another person and then force the victim to engage in certain prohibited conduct, such as prostitution. TEX. PENAL CODE § 20A.02(a)(3). This is the direct criminal provision. Chapter 20A of the Texas Penal Code also makes it a crime to "knowingly . . . receive a benefit from participating in a venture" that traffics another person if the venture forces the person to engage in certain prohibited conduct. *Id.* § 20A.02(a)(4). This is the criminal participant provision.

Second, the "who intentionally or knowingly benefits from participating in a venture that traffics another person" language from § 98.002(a) creates the civil participant provision. TEX. CIV. PRAC. REM. CODE § 98.002(a). However, the text of the civil participant provision does not require plaintiffs to allege that the defendant committed an offense under Chapter 20A. *See id.*

Indeed, the text of § 98.002(a) indicates that the Texas Legislature intended for the civil statute to be broader than its criminal counterpart. Under § 98.002(a), a defendant is civilly liable if they "engage[] in the *trafficking of persons* or . . . intentionally or knowingly benefit[] from participating in a venture that *traffics another person*." TEX. CIV. PRAC. REM. CODE § 98.002(a) (emphasis added). Crucially, "trafficking of persons" has a different meaning than "traffics another person." The Penal Code defines "traffic" as to "transport, entice, recruit, harbor, provide, or otherwise obtain another person by any means." TEX. PENAL CODE § 20A.01(4). "Trafficking of persons" is defined by the Civil Code as conduct that constitutes a criminal offense under Chapter 20A of the Texas Penal Code. TEX. CIV. PRAC. REM. CODE § 98.001. As discussed above, Chapter 20A of the Texas Penal Code makes it a crime to traffic another person and to then force the victim to engage in prostitution or other prohibited conduct. TEX. PENAL CODE § 20A.02. However, simply trafficking another person, without more, is not a crime under Chapter 20A. *See id.* § 20A.02(a).

The civil participant provision provides that a defendant is liable if they participate in a venture that traffics another person but, unlike Chapter 20A, the civil participant provision does not also require the plaintiff to demonstrate she was forced to engage in any prohibited conduct. If a venture traffics another person—such as by transporting them—but does not force them to engage in any prohibited conduct, a defendant who participated in that venture is civilly liable under the

-9-

civil participant provision of § 98.002(a), even though the defendant did not commit a criminal offense under Chapter 20A.

A broad reading of the civil participant provision would make the criminal participant provision superfluous. *See Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 164 (Tex. 2016) (noting that Texas courts "constru[e] [statutes] to avoid rendering any word or provision meaningless"). The broadest possible reading of the civil participant provision would cover any time a defendant participates in a venture that traffics a plaintiff both when a plaintiff was forced to engage in certain prohibited conduct and when a plaintiff was not forced to engage in any prohibited conduct. But the criminal participant provision already creates civil liability when a defendant participates in a venture that traffics a plaintiff and the venture forces the plaintiff to engage in prohibited conduct. Thus, if the Court adopted the broader reading of the civil participant provision, it would also include the conduct expressly addressed in the narrower criminal participant provision. In other words, such an interpretation would mean the criminal participant provision does not do any work in § 98.002(a). *See United States v. Huerta-Rodriguez*, 64 F.4th 270, 279 (5th Cir. 2023) (rejecting an interpretation of a statute when such an interpretation would mean one "provision would do no work"). To avoid rendering the criminal participant provision meaningless, the Court will use the general/specific canon of statutory interpretation.

The general/specific canon of statutory interpretation provides that when a statute includes "a general authorization and a more limited, specific authorization," courts must interpret the general provision to avoid rendering the specific provision superfluous. *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012). This canon flows from the principle that "it is a commonplace of statutory construction that the specific governs the general." *Morales v. Trans World*

*Airlines, Inc.*, 504 U.S. 374, 384 (1992). In other words, if a statute has a general and specific provision, and the general provision appears to include conduct addressed in the specific provision, "the general [provision] must be taken to affect only such cases within its general language as are not within the provisions of the [specific] enactment." *RadLAX Gateway Hotel, LLC*, 566 U.S. at 646 (quoting *United States v. Chase*, 135 U.S. 255, 260 (1890)). Here, the general/specific canon of statutory interpretation requires that the civil participant provision only regulates participation in a venture when such participation does not result in a violation of Chapter 20A.

In § 98.002(a), the civil participant provision is a general provision that creates liability any time a defendant participates in a venture that traffics a plaintiff, while the criminal participant provision is a specific provision that only creates liability when a defendant participates in a venture that traffics a plaintiff and forces the plaintiff to engage in certain prohibited conduct. Thus, the Court must interpret the civil participant provision to only apply in cases where a defendant participates in a venture that traffics another person, but where the person is not forced to engage in any of Chapter 20A's prohibited conduct. *See id.* Such an interpretation will prevent the civil participant provision from swallowing the criminal participant provision and will give meaning to every word in § 98.002(a).

Salesforce argues that § 98.002(a) simply addresses the same conduct criminalized by Chapter 20A of the Texas Penal Code. *See* Doc. 75, Reply, 4–5. In effect, Salesforce argues that § 98.002 (a) only imposes participant liability for cases where a defendant's participation in a venture is a crime under Chapter 20A. However, such an interpretation would render the civil participant provision superfluous because the "trafficking of persons" language in § 98.002(a) already imposes civil liability on defendants who violate Chapter 20A by participating in a venture. *See Houston Belt*

*& Terminal Ry. Co.*, 487 S.W.3d at 164. Therefore, the language creating a cause of action against any defendant "who intentionally or knowingly benefits from participating in a venture that traffics another person" must be addressing conduct other than that criminalized by Chapter 20A.[2]

In sum, to give effect to every word in § 98.002(a), the Court holds that the statute establishes three different "provisions" that each create civil liability. The first two provisions—the direct criminal and criminal participant provisions—provide a cause of action if the defendant commits a criminal offense under Chapter 20A of the Texas Penal Code. Meanwhile, the third provision—the civil participant provision—creates civil liability when a plaintiff is trafficked but only when their trafficking does not constitute an offense under Chapter 20A.

    2.   The Direct Criminal and Criminal Participant Provisions of § 98.002(a) Require Actual Knowledge of the Plaintiff's Trafficking.

The first two provisions—the direct criminal and criminal participant—impose civil liability on any defendant who has committed a criminal offense under Chapter 20A. Under these two provisions, a defendant is liable if they "knowingly traffic[] another person" and force them to engage in certain conduct, or if the defendant "knowingly receives a benefit from participating in a venture" that traffics a person and forces them to engage in certain conduct.

Because the first two provisions of § 98.002(a) only create civil liability if a defendant has violated Chapter 20A, the Court looks to the meaning of Chapter 20A to determine what Plaintiffs must allege to state a claim under the first two provisions. As relevant here, a defendant violates Chapter 20A if he knowingly:

> (3) traffics another person and, through force, fraud, or coercion, causes the trafficked person to engage in conduct prohibited by:
>     (A) Section 43.02 (Prostitution);

---

[2] The Court previously noted that "§ 98.002(a) seems to extend liability beyond that contemplated in Chapter 20A." Doc. 35, Mem. Op. & Order, 10 n.2.

(B) Section 43.03 (Promotion of Prostitution);
(B-1) Section 43.031 (Online Promotion of Prostitution);
(C) Section 43.04 (Aggravated Promotion of Prostitution);
(C-1) Section 43.041 (Aggravated Online Promotion of Prostitution); or
(D) Section 43.05 (Compelling Prostitution); [or]
(4) receives a benefit from participating in a venture that involves an activity described by Subdivision (3)

TEX. PENAL CODE § 20A.02(a)(3)–(4).

The word "knowingly" only appears at the beginning of Chapter 20A.02(a). *See id.* However, when a criminal statute uses the word "knowingly," the knowingly mens rea is usually required for every element of the crime. *See Delay v. State*, 465 S.W.3d 232, 247 (Tex. Crim. App. 2014); *see also United States v. X–Citement Video, Inc.*, 513 U.S. 64, 69, 73 (1994). Thus, a defendant only commits a crime under Chapter 20A if they either (1) have actual knowledge that they trafficked a person and then forced them to engage in certain conduct or (2) if they knowingly receive a benefit from participating in a venture and the defendant knows the venture both trafficked the person and forced the person to engage in certain prohibited conduct, such as prostitution. Therefore, a defendant only commits an offense under Chapter 20A if they knew a specific person was trafficked and if the defendant knew that specific person was forced to engage in certain prohibited conduct.

The Court further concludes that the direct criminal and criminal participant provisions require demonstrating that the defendant has knowledge of the trafficking violation sued upon. Section 98.002(a) provides that a defendant who violates Chapter 20A "is liable to *the* person trafficked." TEX. CIV. PRAC. & REM. CODE § 98.002(a) (emphasis added). This means that the criminal provisions require the plaintiff to allege that they were a victim of a Chapter 20A crime committed by the defendant, which requires demonstrating that the defendant had actual knowledge of the victim's trafficking. Thus, to state a claim under the criminal participant provision,

a plaintiff must allege that the defendant violated Chapter 20A as to the plaintiff. Therefore, a plaintiff asserting a claim under the criminal participant provision must allege that the defendant had actual knowledge of their specific trafficking to state a claim.

Additionally, the Court held in a similar case that the federal human trafficking statute—18 U.S.C. § 1595—requires the defendant to have knowledge of the plaintiff's specific trafficking. *Doe (S.M.A.) v. Salesforce, Inc.*, No. 3:23-CV-0915-B, 2024 WL 1337370, at *15 (N.D. Tex. Mar. 28, 2024) (Boyle, J.). The Texas statute "closely resembles" the federal statute, *In re Facebook, Inc.*, 625 S.W.3d at 96, and the Court sees no reason that the Texas statute should not also require knowledge of the violation sued upon, as opposed to simply requiring general knowledge of trafficking violations.

Therefore, a defendant only commits a crime under Chapter 20A if they have actual knowledge that the victim was trafficked. Because the first two provisions of § 98.002(a) require the plaintiff to establish that the defendant violated Chapter 20A—i.e., that the defendant committed a crime—a plaintiff must allege that the defendant had actual knowledge of the plaintiff's trafficking to state a claim under the direct criminal and criminal participant provisions of § 98.002(a). Because Plaintiffs alleged that they were trafficked and forced to engage in prostitution, *see generally* Doc. 1-5, Pet., their allegations arise under the criminal participant provision. Therefore, they must allege facts sufficient to allow the Court to draw the reasonable inference that Salesforce had actual knowledge of their specific trafficking.

Plaintiffs argue that § 98.002(a) does not require the defendant to have any knowledge of the Plaintiffs' trafficking. Doc. 71, Resp., 9–13. When making this argument, it appears that Plaintiffs are attempting to rely on the civil participant provision.[3] *See id.* However, the civil

---

[3] The Court need not determine whether the civil participant provision also requires actual knowledge of the plaintiff's trafficking because this provision does not apply to Plaintiffs' allegations.

participant provision does not apply to Plaintiffs' allegations because they have alleged that they were forced to engage in conduct prohibited by Chapter 20A—i.e., that Salesforce committed a criminal offense—which means their claims fall under the criminal participant provision, *not* the civil participant provision. *See generally* Doc. 1-5, Pet.

Even though the "general language" of the civil participant provision is broad enough to include Plaintiffs' claims, the Court holds that the civil participant provision does not apply here because Plaintiffs' claims are "specifically dealt with in" the criminal participant provision. *See RadLAX Gateway Hotel, LLC*, 566 U.S. at 646. As discussed above, the criminal participant provision requires the plaintiff to demonstrate that the defendant has actual knowledge of the plaintiff's specific trafficking. When a plaintiff's claim arises under a statute's specific provision, the plaintiff must satisfy the specific provision's requirements to state a claim. *See id.* at 645. Plaintiffs may not use the general provision—here, the civil participant provision—to circumvent the specific provision's actual knowledge requirement. *See id.* Therefore, Plaintiffs must allege that Salesforce had actual knowledge of their trafficking to state a claim under the criminal participant provision of § 98.002(a).

3. Plaintiffs Have Failed to Allege That Salesforce Had Actual Knowledge of Their Trafficking as Necessary to State a Claim Under the Criminal Participant Provision of § 98.002(A).

Plaintiffs failed to state a claim because they did not sufficiently allege that Salesforce had actual knowledge of their trafficking. While the Court found that Plaintiffs sufficiently alleged that Salesforce participated in a venture, there is nothing to suggest that Salesforce had actual knowledge of their trafficking.

To state a claim under the criminal participant provision, Plaintiffs needed to allege that Salesforce had actual knowledge both that (1) Plaintiffs were trafficked and (2) that they were forced to engage in certain prohibited conduct, such as prostitution. *See* TEX. PENAL CODE § 20A. 02(a)(3)–(4). The Texas Penal Code defines "[t]raffic" as to "transport, entice, recruit, harbor, provide, or otherwise obtain another person by any means." *Id.* § 20A.01(4). In contrast with its federal analogue, the Texas statute criminalizing human trafficking does not include "advertising" within its definition of trafficking. *Compare id. with* 18 U.S.C. § 1591.

None of the Plaintiffs' allegations are sufficient to establish that Salesforce had actual knowledge that the Plaintiffs were trafficked as defined by the Texas Penal Code. Plaintiffs have not alleged that Salesforce knew that its venture with Backpage ever transported or recruited any of the Plaintiffs. Indeed, most of the allegations in the Petition focus on Salesforce's relationship with Backpage, and how these efforts helped Backpage *advertise* Plaintiffs online, as opposed to alleging facts indicating that Salesforce had actual knowledge these Plaintiffs were transported, enticed, recruited, or otherwise obtained by its venture with Backpage. *See* TEX. PENAL CODE § 20A.01(4).

Plaintiffs also failed to allege that Salesforce had actual knowledge that they were forced to engage in prostitution. For one, Plaintiffs have not alleged that Salesforce saw each of their advertisements. And even if Salesforce had seen the advertisements, there are not enough facts for the Court to draw the reasonable inference that Salesforce knew each plaintiff was forced to engage in prostitution. For example, Plaintiffs do not allege that any Salesforce employees ever said Plaintiffs were likely being forced to engage in prostitution. Further, Plaintiffs do not meaningfully argue that Salesforce had actual knowledge of each of their specific trafficking. *See* Doc. 71, Resp., 21–24 (arguing that Plaintiffs sufficiently pleaded a Chapter 98 claim under its proposed scienter standard).

Therefore, Plaintiffs have failed to allege that Salesforce had actual knowledge of their specific trafficking.

\* \* \*

In sum, § 98.002(a) creates civil liability for three types of conduct. The first two provisions create civil liability for conduct that constitutes a criminal offense under Chapter 20A of the Texas Penal Code. The criminal provisions both require alleging that the defendant had actual knowledge of the plaintiff's specific trafficking. The third provision is the civil participant provision, which creates civil liability for defendants who participate in a venture that traffics a person but only where the defendant did not violate Chapter 20A. Plaintiffs' claims fall under the criminal participant provision, and they failed to allege sufficient facts to allow the Court to draw the reasonable inference that Salesforce had actual knowledge of their trafficking. Accordingly, the Court grants Salesforce's Motion to Dismiss as to the Plaintiffs' § 98.002(a) claims.

C.     *The Court Grants Plaintiffs Leave to Amend.*

Salesforce argues that the Court should dismiss Plaintiffs' Chapter 98 claims with prejudice because Plaintiffs have failed to demonstrate good cause to amend. Doc. 75, Reply, 10 n.2. District courts generally give plaintiffs leave to amend their complaints "when justice so requires." FED. R. CIV. P. 15(a)(2). When deciding whether to grant leave to amend, district courts consider the following factors: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998) (citations and emphasis omitted). Granting leave to amend a complaint is futile if "the amended complaint

would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000).

However, once a scheduling order's deadline to amend the pleadings has passed, parties moving to amend their pleadings must satisfy Federal Rule of Civil Procedure 16(b). *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003). Rule 16(b)(4) requires the moving party to show that "good cause" warrants amending their pleadings. FED. R. CIV. P. 16(b)(4). The Court must first decide whether Rule 15(a) or Rule 16(b)(4)'s good cause standard applies.

Rule 15(a)'s "when justice so requires" standard applies here because Plaintiffs requested leave to amend before the deadline had passed. The deadline to file a motion for leave to amend pleadings was February 6, 2025. Doc. 40, Scheduling Order, 1. Plaintiffs requested leave to amend their Petitions in their Response to the Motion for Judgment on the Pleadings on January 15, 2025. Doc. 71, Resp., 24–25. Accordingly, the Court will apply Rule 15(a)'s "when justice so requires" standard. *See S&W Enters., L.L.C.*, 315 F.3d at 535.

Salesforce argues that the good cause standard should apply "[b]ecause the pleadings are closed and the Court has entered a scheduling order." Doc. 75, Reply, 10 n.2. However, neither of these events require the plaintiff to satisfy the good cause standard. Instead, the good cause standard only applies if the Plaintiffs sought the Court's leave to amend their pleadings after the Scheduling Order's deadline had passed. *See S&W Enters., L.L.C.*, 315 F.3d at 535.

It is not futile to grant Plaintiffs leave to amend their Petitions. Plaintiffs have not yet filed an Amended Complaint—the petitions they originally filed in state court are still the operative pleadings. Further, it was not clear what level of scienter Plaintiffs needed to allege before they filed this lawsuit. For example, it was not clear whether they would need to allege Salesforce had actual

knowledge of their specific trafficking, whether Salesforce only needed knowledge of a general trafficking problem on Backpage's website, or if Plaintiffs did not need to allege that Salesforce had any knowledge of trafficking.

In a similar case, the Court dismissed the Plaintiffs' claims without prejudice and granted leave to amend after the Court determined the scienter standard for federal human trafficking claims. *Doe (S.M.A.)*, 2024 WL 1337370, at *18. After receiving leave to amend, the Plaintiffs were able to remedy the deficiencies the Court identified in the Order. *Doe (S.M.A.)*, 2025 WL 888433, at *8 (N.D. Tex. Mar. 21, 2025) (Boyle, J.). The Court sees no reason to proceed differently here. Accordingly, the Court grants Plaintiffs leave to amend to address the deficiencies identified in this Order. Plaintiffs may file a consolidated complaint within 21 days of this Order.

## IV.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS** Salesforce's Motion for Judgment on the Pleadings (Doc. 41) and **DISMISSES** Plaintiffs' Chapter 98 claims against Salesforce **WITHOUT PREJUDICE**. Plaintiffs must file an Amended Complaint within **21 days** of the date of this Order.

> **SO ORDERED**.
>
> **SIGNED: May 2, 2025**.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE