IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| A.S., an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>SALESFORCE, INC.,<br>BACKPAGE.COM, LLC, AND<br>CARL FERRER,<br><br><br>    Defendants. | CIVIL ACTION NO. 3:23-CV-1039-B<br><br>Consolidated with:<br><br>CIVIL ACTION NO. 3:23-CV-1040-B<br>CIVIL ACTION NO. 3:23-CV-1042-B<br>CIVIL ACTION NO. 3:23-CV-1044-B<br>CIVIL ACTION NO. 3:23-CV-1045-B<br>CIVIL ACTION NO. 3:23-CV-1046-B<br>CIVIL ACTION NO. 3:23-CV-1047-B<br>CIVIL ACTION NO. 3:23-CV-1048-B<br>CIVIL ACTION NO. 3:23-CV-1049-B<br>CIVIL ACTION NO. 3:23-CV-1050-B<br>CIVIL ACTION NO. 3:23-CV-1051-B<br>CIVIL ACTION NO. 3:23-CV-1052-B<br>CIVIL ACTION NO. 3:23-CV-1056-B<br>CIVIL ACTION NO. 3:23-CV-1057-B<br>CIVIL ACTION NO. 3:23-CV-1058-B<br>CIVIL ACTION NO. 3:23-CV-1059-B<br>CIVIL ACTION NO. 3:23-CV-1071-B<br>CIVIL ACTION NO. 3:23-CV-1110-B<br>CIVIL ACTION NO. 3:23-CV-1122-B<br>CIVIL ACTION NO. 3:23-CV-1352-B<br>CIVIL ACTION NO. 3:23-CV-1353-B |

**MEMORANDUM IN SUPPORT OF EXPEDITED MOTION BY DEFENDANT
SALESFORCE, INC. TO STAY PROCEEDINGS PURSUANT TO 18 U.S.C. § 1595(b) OR,
IN THE ALTERNATIVE, EXPEDITED REQUEST FOR LIMITED STAY OF
DISCOVERY PENDING RESOLUTION OF MOTION TO STAY PROCEEDINGS ON
NORMAL BRIEFING SCHEDULE, AND VACATUR OF TRIAL DATE**

## TABLE OF CONTENTS

Page

INTRODUCTION.................................................................................................................. 1

BACKGROUND .................................................................................................................. 4

LEGAL STANDARD ........................................................................................................... 6

ARGUMENT ....................................................................................................................... 7

CONCLUSION .................................................................................................................. 12

MEMORANDUM IN SUPPORT OF EXPEDITED MOTION BY DEFENDANT SALESFORCE, INC.
TO STAY PROCEEDINGS

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Doe 1-10 v. Fitzgerald*,
    102 F.4th 1089 (9th Cir. 2024) ...............................................................6, 7, 10, 11

*Doe v. Backpage*,
    No. 3:23-CV-508 (N.D. Tex. Apr. 4, 2023), Dkt. No. 8......................................3, 9

*Doe v. Mindgeek USA Inc.*,
    2021 WL 6618628 (C.D. Cal. Dec. 28, 2021) ........................................................6

*Florida Abolitionist, Inc. v. Backpage.com LLC*,
    No. 6:17-CV-218 (M.D. Fla. Dec. 6, 2018), Dkt. No. 159............................3, 9, 11

*Jane Doe #14 v. Backpage.com LLC*,
    3:20-CV-0157-B (N.D. Tex. Apr. 16, 2020), Dkt. No. 15 ............................2, 6, 11

*Jane Doe No. 1 v. Backpage.com, LLC*,
    No. 1:17-CV-11069 (D. Mass. Nov. 30, 2018), Dkt. No. 100............................3, 9

*Lunkes v. Yannai*,
    882 F. Supp. 2d 545 (S.D.N.Y 2012).....................................................................6

*People v. Lacey*,
    No. 16FE024013 (Sacramento Sup. Ct.) ............................................................8, 9

*Thompson v. Backpage.com, LLC*,
    No. 1:20-cv-06734-JG (S.D.N.Y. Oct. 12, 2020), Dkt. No. 100 .........................3, 9

*United States v. $1,546,076.35 in Bank Funds Seized from Republic Bank of
    Arizona Account '1889*,
    2:18-CV-8420 (C.D. Cal. July 9, 2025), Dkt. No. 328..........................................8

*United States v. Backpage.com, LLC*
    No. 2:18-CR-465 (D. Ariz.).................................................................................1, 8

*United States v. Ferrer*,
    No. 2:18-CR-464 (D. Ariz.)..........................................................................1, 5, 7, 8

*United States v. Hyer*,
    No. CR-18-00422-005 (D. Ariz.)...........................................................................7

*United States v. Lacey*,
    Case No. 2:18-CR-00422 (D. Ariz.) ..............................................1, 7, 8, 10, 11, 12

**Statutes**

18 U.S.C. § 1591.............................................................................................................3

18 U.S.C. § 1595................................................................................................... *Passim*

MEMORANDUM IN SUPPORT OF EXPEDITED MOTION BY DEFENDANT SALESFORCE, INC. TO STAY
PROCEEDINGS

## INTRODUCTION

Pursuant to 18 U.S.C. § 1595(b) of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), Defendant Salesforce, Inc. ("Salesforce") moves this Court for an order staying proceedings pending a final adjudication of the criminal proceedings styled as *United States v. Lacey*, Case No. 2:18-CR-00422 (D. Ariz.), *United States v. Backpage.com*, No. 2:18-CR-00465 (D. Ariz.), *United States v. Hyer*, No. CR-18-00422 (D. Ariz.), and *United States v. Ferrer*, No. 2:18-CR-00464 (D. Ariz), as well as related state prosecutions in California. These criminal cases involve Backpage, its corporate affiliates, its former CEO Carl Ferrer, and other former executives and employees of Backpage. Salesforce is filing this motion for a stay of proceedings under 18 U.S.C. § 1595(b) in all actions in which discovery is currently pending: the above-entitled action, *S.M.A. v. Salesforce, Inc.*, 23-CV-915-B (N.D. Tex.); *A.B. v. Salesforce, Inc.*, 20-CV-1254 (S.D. Tex.); and *G.G. v. Salesforce, Inc.*, 20-CV-2335 (N.D. Ill.). Salesforce is requesting expedited ruling by August 14, 2025 only in the above-entitled action and *G.G.*; Plaintiffs have not served subpoenas in *A.B.* or *S.M.A.*

If the Court prefers not to hear Salesforce's motion for a § 1595(b) stay on an expedited basis, Salesforce moves in the alternative, on an expedited basis, for a temporary stay of depositions of any Backpage-related witnesses pending this Court's ruling on the motion for a § 1595(b) stay. In either event—an expedited ruling on the overall § 1595(b) motion, or a more limited expedited ruling on the temporary stay of Backpage depositions—Salesforce seeks a ruling by August 14, 2025, the day before the deposition of former Backpage employee Patrick Conner is currently scheduled to proceed in *A.S.* and *G.G.* Salesforce also moves for a vacatur of the trial date until this Court rules on Salesforce's motion for a § 1595(b) stay.

Section 1595(a) allows an individual who is a victim of a violation of § 1591 to sue the perpetrator or "whoever knowingly benefits … from participation in a venture which that person knew or should have known has engaged in" a § 1591 violation. Section 1595 further states that "[a]ny civil action filed under subsection (a) shall be stayed during the pendency of any criminal action arising out of the same occurrence in which the claimant is the victim." 18 U.S.C.

§ 1595(b)(1).  A "criminal action" is defined to be "pending until final adjudication in the trial court."  *Id.*; § 1595(b)(2).  The statutory language is unequivocal: A stay under § 1595(b) is *mandatory* whenever the civil claim involves the same victim and arises from the same occurrence as the pending criminal proceedings.

Plaintiffs' claims all meet this test.  Each Plaintiff's civil claim alleges that she was a victim of a violation of Section 1591 by Backpage because Backpage, allegedly with culpable knowledge, allowed third-party advertisers to post on its backpage.com website ads for each Plaintiff offering that person for commercial sex procured through force, coercion, or fraud.  As to Salesforce, Plaintiffs' claims in all these cases turn on their allegations that Salesforce, by selling customer relationship management ("CRM") software to an affiliate of Backpage, allegedly with knowledge that Backpage's website, backpage.com, was being used by criminals to traffic individuals for commercial sex, thereby knowingly participated in a venture—defined in the complaints as Backpage itself—that in turn violated federal sex trafficking laws, specifically 18 U.S.C. § 1591.

The criminal cases also allege that Backpage allowed its same website, backpage.com, to be used to sell individuals for sex.  The charges in the criminal cases include facilitation of prostitution and related money laundering charges, all brought against former executives and employees of Backpage.  Although the government does not allege sex trafficking under § 1591, the underlying conduct the government alleges is the same conduct that is the subject of Plaintiffs' complaint, charging that Backpage knowingly allowed its site to be used for illegal prostitution and that it benefited from that illegal activity.  Because Plaintiffs' claims against Salesforce involve the same victims who allege that they were trafficked by Backpage, and involve the same "occurrence"—namely, either each individual Plaintiff's trafficking or Backpage's alleged facilitation of prostitution more generally—they fall squarely within § 1595(b).

This Court previously stayed a similar action under the TVPRA's mandatory stay provision.  The Court noted that, under the statute, if both a civil and criminal case "arise out of the same occurrence in which the claimant is the victim" the Court "shall"—i.e., *must*—stay the civil case while the criminal case proceeds.  Ex. A at APP001–003, *Jane Doe #14 v. Backpage.com*

*LLC*, No. 3:20-CV-0157-B (N.D. Tex. April 16, 2020), Dkt. No. 15 (Boyle, J.) (citing 18 U.S.C. § 1595(b)(1)). As the Court concluded in *Jane Doe #14*, "[b]ecause Plaintiff's complaint relies, at least in part, on Defendants' alleged criminal conduct for which there are criminal actions pending … § 1595(b) mandates a stay in this case"). *Id.* at APP002. This same logic led four other courts to consider similar stay requests involving civil claims under § 1595 and related state-law torts involving Backpage and its executives to enter the requested stays, even in cases where the victims were not specifically named in the criminal cases. *See* Ex. B at APP004–005, *Doe v. Backpage*, No. 3:23-CV-508 (N.D. Tex. Apr. 4, 2023), Dkt. No. 9 (Godbey, J.); Ex. C at APP006–009, *Thompson v. Backpage.com, LLC,* No. 1:20-cv-06734-JGK (S.D.N.Y. Oct. 12, 2020), Dkt. No. 10; Ex. D at APP010–014, *Florida Abolitionist, Inc. v. Backpage.com LLC*, No. 6:17-CV-218 (M.D. Fla. Dec. 6, 2018), Dkt. No. 159; Ex. E at APP 015–018, *Jane Doe No. 1 v. Backpage.com, LLC*, No. 1:17-CV-11069 (D. Mass. Nov. 30, 2018), Dkt. No. 100. The same circumstances exist here for all Plaintiffs, each of whom alleges that she was a victim of Backpage's alleged violation of the federal criminal sex trafficking statute, 18 U.S.C. § 1591, by operating the backpage.com website and allowing ads selling them for coerced sex to be posted on that website. Under the plain text of § 1595(b), this Court should stay this consolidated action pending the criminal proceedings involving the same alleged wrongdoing by Backpage.

Recent events in these cases confirm why a § 1595(b) stay is critical to ensure fairness in these cases. Counsel for both sides in these related cases have indicated their intent to seek testimony from former employees and executives of Backpage, as this testimony would be relevant to both parties' claims and defenses. *See*, *e.g.*, Dkt. 39 at 5; 92, 94, 102. Among other such witnesses, the parties sought the deposition of third-party witness Patrick Conner, a former Backpage employee who was a liaison between Salesforce and Backpage. His deposition currently is scheduled for August 15, 2025. Based on prior discussions, it was Salesforce's understanding that Conner would testify as to the nature of the interactions between Salesforce and Backpage, including the nature and uses of the software Salesforce provided, as well as the accuracy of Plaintiff's allegations that Salesforce assisted Backpage's business in various ways beyond the

provision of a software package. But the parties were then advised by Conner's counsel that he would invoke his Fifth Amendment right against self-incrimination and decline to answer any substantive question asked by either party during the deposition.

Conner's position aligns with that of other Backpage employees and executives, including co-founders Michael Lacey and Scott Spears, former CEO Carl Ferrer, and former executive Andrew Padilla, all of whom have indicated that they would invoke the Fifth Amendment during any deposition noticed in these pending civil cases, at least so long as the Backpage criminal proceedings remain pending. Yet, despite Conner's clear position that he will provide only a Fifth Amendment refusal in response to any substantive question, Plaintiffs' counsel is insisting on proceeding with his deposition—apparently hoping that they can try to get the Court or a jury to draw adverse inferences from his invocation of the Fifth Amendment. Other critical evidence relating to the Backpage criminal proceedings is also unavailable due to the pendency of the criminal cases. For instance, Plaintiffs' counsel in the *G.G.* action served several *Touhy* letters on the Department of Justice in October 2024 and then served a subpoena in March 2025 for relevant documents seized from Backpage and compiled in the Backpage criminal investigations. *See* Ex. F at APP019–037. To date, no such documents have been produced in this litigation, and Salesforce's understanding is that the government has not responded to the *Touhy* letters or the subpoena or otherwise made available any of the documents it seized from Backpage. This factual background confirms the urgency of the § 1595(b) stay, as Salesforce should not be prejudiced in its defense of this civil action either by the absence of relevant evidence supporting that defense, or by claimed inferences that Plaintiff may assert should be drawn from the invocation of the Fifth Amendment by a third-party witness.

## BACKGROUND

The overlap here between the criminal and civil proceedings is direct and substantial: both arise from the same alleged conduct by Backpage and its executives, and Plaintiffs' own complaint incorporates facts and admissions from the criminal case. The FAC names Backpage, former Backpage CEO Carl Ferrer, and Salesforce as defendants, alleging that "Backpage and Plaintiffs'

4

street-level traffickers committed violations of 18 U.S.C. § 1591 against Plaintiff[s]" through advertisements selling Plaintiffs for commercial sex that were posted between 2014 and April 2018. FAC ¶ 404. Plaintiffs allege that Backpage "directly participated and facilitated [Plaintiffs'] sex trafficking through the posting of advertisements for sex trafficking," including "providing a forum for Plaintiffs['] trafficker[s] to post [them] for trafficking," "failing to stop online posting of Plaintiffs," "accepting advertising fees from human traffickers," "designing and implementing The Strip Term from Ad Filter to automatically sanitize advertisements intended to promote human trafficking, prostitution, and/or the sexual exploitation of victims," in addition to other conduct. *See, e.g.*, *id.* ¶ 405(a)–(i).

Plaintiffs allege that Salesforce's sale of CRM software and provision of tech support incidental to that software constitutes a violation of 18 U.S.C. § 1595. FAC ¶¶ 389–392. They sued Salesforce on the theory that Salesforce, by selling its software to Backpage over a five-year-period, thereby "participated in a venture" with Backpage, one of Plaintiffs' primary traffickers under 18 U.S.C. § 1591, and benefitted from participation in that venture by receiving payments for software sales. *Id.* ¶ 391. Plaintiffs allege that, between 2013 and 2015, "Backpage earned over 99% of its revenue from adult ads, a substantial percentage of which came directly from on-line prostitution and sex trafficking." *Id.* ¶ 11. They further allege that during the five-year contractual relationship, Salesforce "had sufficient exposure to information about the nature of Backpage's business that Salesforce knew or should have known that Backpage was an illegal sex trafficking website where victims were advertised for commercial sex and forced to engage in commercial sex by means of force, fraud, or coercion." *Id.* ¶ 15. Plaintiffs' general theory of causation is that Salesforce "created, owned, controlled, maintained, and provided to Backpage the Customer Relationship Management ('CRM') technology that facilitated the growth of Backpage and the trafficking of untold thousands on its website." *Id.* ¶ 13.

The allegations in the FAC are closely related to those in the ongoing criminal proceedings involving Backpage, styled as *United States v. Lacey*, No. 2:18-CR-422 (D. Ariz.), *United States v. Backpage.com*, No. 2:18-CR-465 (D. Ariz.), and *United States v. Ferrer*, No. 2:18-CR-464 (D.

Ariz). In those cases, Backpage and its former executives and employees were charged with crimes relating to the same subject matter—namely, the sale of individuals for sex on the backpage.com website. Backpage's co-founder and co-owner, Michael Lacey, currently faces retrial for his involvement in Backpage's operations, and other defendants, including Dan Hyer, Backpage's former Sales & Marketing Director, and former CEO Carl Ferrer, still face sentencing. The civil Plaintiffs in the instant cases allege that, in 2018, the federal government's investigatory and law enforcement efforts "came to a head" when the Department of Justice "filed a 93-count, 61-page indictment" "charging the founders of Backpage—Lacey and James Larkin—and other individuals heavily involved in Backpage's ownership and operations with" violations related to facilitation of prostitution and money laundering. FAC ¶ 95.

Plaintiffs admit in the FAC that these criminal proceedings are "*relevant to the current lawsuit*," expressly incorporating certain excerpted stipulated facts from Carl Ferrer's and Backpage's guilty pleas, in which these defendants "concede[d] Backpage's dominant role in the promotion of commercial sex." FAC ¶ 96. Plaintiffs further allege that, "[a]t all relevant times, Salesforce knowingly benefitted from participating in a venture that it knew or certainly should have known was engaged in sex trafficking." *Id.* ¶ 112. Plaintiffs' own complaint thus confirms that this action "aris[es] out of the same occurrence" that gave rise to the pending criminal proceedings against former Backpage employees and executives. *See* 18 U.S.C. § 1595(b)(1).

## LEGAL STANDARD

Under the TVPRA, a court "shall … stay" "[a]ny civil action" brought under 18 U.S.C. § 1595 if "(1) a criminal action or investigation is pending; (2) the criminal action arises 'out of the same occurrence' as the civil action; and (3) the plaintiff in the civil action is the victim of an occurrence that is the same in the civil and criminal proceedings." *Doe 1-10 v. Fitzgerald*, 102 F.4th 1089, 1098 (9th Cir. 2024) (citing 18 U.S.C. § 1595(b)(1)). Courts read this mandatory stay provision broadly: Where the provision applies, the court *must* impose a stay as it is a "mandatory obligation on the district court." *Id.* at 1098, 1101; *see Jane Doe #14 v. Backpage.com LLC*, 3:20-CV-0157-B (N.D. Tex. April 16, 2020), Dkt. No. 15 (Boyle, J.); *Doe v. Mindgeek USA Inc.*, 2021

WL 6618628, at *3 (C.D. Cal. Dec. 28, 2021) (any civil action filed under 18 U.S.C. § 1595 "shall" be stayed during the pendency of a parallel criminal action).

The mandatory stay applies to the entire "action," even if there are other claims, *Fitzgerald*, 102 F.4th at 1101, or other civil defendants that have not been "criminally charged," *Lunkes v. Yannai*, 882 F. Supp. 2d 545, 550 (S.D.N.Y 2012). *See also Fitzgerald*, 102 F.4th at 1101 (the word "action" in § 1595(b)(1) reflects its "ordinary meaning and encompasses the entire civil lawsuit"); *Lunkes*, 882 F. Supp. 2d at 550 ("In light of the statute's goal of protecting the government's ability to prosecute traffickers criminally, it is most appropriate for a § 1595 stay to encompass all defendants in a case."). And the defendant in the criminal action need not face sex trafficking charges in order for the stay provision to apply. *See Doe v. Athens Cnty.*, 2022 WL 1569979, at *1 (S.D. Ohio May 18, 2022).

## ARGUMENT

Plaintiffs' consolidated action against Salesforce arises from the same events that underlie the pending criminal actions in *United States v. Lacey*, *United States v. Backpage.com, LLC*, *United States v. Hyer*, and *United States v. Ferrer*, and satisfies all three elements of the mandatory stay provision of § 1595(b), mandating a stay.

***Criminal Actions Are Pending.*** A "criminal action" includes "prosecution[s]," and a prosecution "is pending until final adjudication in the trial court." 18 U.S.C. § 1595(b)(2). Plaintiffs allege that the FBI seized Backpage.com and commenced criminal proceedings against Backpage's owners, officers, and employees, including its co-founder, Michael Lacey. FAC ¶ 95. Plaintiffs cite and refer to these proceedings, specifically the "93-count, 61 page-indictment" in the U.S. District Court for the District of Arizona against Backpage founders, including Michael Lacey. *Id.* In 2023, Lacey was tried but the jury could not reach a verdict on certain charges, and the court ordered a mistrial. *See* Ex. G at APP038–043, *Lacey*, 2:18-CR-00422, Dkt. No. 2035 (Notice of Retrial) at 2. In early 2024, the government filed a notice of its intent to retry Lacey "on the 84 counts for which the jury was unable to reach a verdict." *Id.* Lacey continues to await re-trial. *See* Ex. H at APP044–047, *Lacey*, Dkt. No. 2294, at 2 (January 3, 2025 Order Regarding

7

Lacey's Pre-Trial Release Conditions).  Sentencing also has been continued for two cooperating defendants in related Backpage criminal cases.  As to defendant Daniel Hyer, the court granted the government's fourteenth request to continue sentencing to allow Hyer to provide further cooperation, including potential testimony at Lacey's retrial and in a related California prosecution.  *See United States v. Hyer*, No. 2:18-CR-00422-005 (D. Ariz. Jan. 30, 2025), Dkt. No. 2326.  And in *United States v. Ferrer*, the court granted the government's thirteenth request to continue sentencing for former Backpage CEO Carl Ferrer, also based on his ongoing cooperation.  *See* Ex. I, APP048–051, No. 2:18-CR-464-001-PHX-DJH, (D. Ariz. Jan. 30, 2025), Dkt. No. 155.  These continued sentencing delays confirm that the government's active criminal investigation and prosecution arising from Backpage's conduct remain ongoing.  And a July 2025 filing by the government in a related forfeiture matter involving Backpage suggests these cases will not be resolved in the near future.  The government noted that it would request that the stay entered in that case be extended because the Ferrer and Backpage criminal matters are stayed pending the adjudication of the appeals of the various convictions in the *Lacey* matter, and these appeals are just now reaching the briefing stage before the Ninth Circuit.  *See* Ex. J, APP052–055, *United States v. $1,546,076.35 in Bank Funds Seized from Republic Bank of Arizona Account '1889*, No. 2:18-CV-8420 (C.D. Cal. July 9, 2025), Dkt. No. 328 (noting that the opening brief in the criminal appeals in the Ninth Circuit were due on July 30, 2025 and the answering briefs are due on August 29, 2025).

 Backpage and its affiliated entities also have an open federal criminal matter.  *See United States v. Backpage.com, LLC*, No. 2:18-CR-465 (D. Ariz.).  Although sentencing for Backpage and its affiliates is scheduled for September 9, 2025, the previous sentencing hearings have been continued twelve times since 2018.[1]

---

[1] Salesforce notes that the Backpage criminal case has progressed to the point that $200 million in restitution funds have been made available for "victims whose sex trafficking was facilitated through advertisements posted on Backpage.com"  On July 31, 2025, the federal government announced that the deadline to apply for funds from this restitution fund is February 2, 2026.

Michael Lacey and Carl Ferrer also face related criminal matters in California state court that have not been resolved and necessitate a stay. *See People v. Lacey*, No. 16FE024013 (Sacramento Sup. Ct.). Lacey's criminal matter remains active, as the docket for the case reflects hearings scheduled for October 3, 2025 on numerous items, including motions to dismiss, to quash, and to suppress. *See* Ex. L at APP064. Earlier this year, the federal government requested that Carl Ferrer's sentencing be continued in part because of the possibility that Carl Ferrer could provide assistance in the *People v. Lacey* trial. *See* Ex. I at APP050, *Ferrer*, 2:18-CR-464-001, Dkt. No. 155. Carl Ferrer also has a pending criminal matter in California state court for which he is scheduled to be sentenced on October 3, 2025. *See People v. Ferrer*, No. 16FE024013 (Sacramento Sup. Ct.); Ex. L at APP058.

Finally, that the criminal cases involving Backpage and its executives remain open is clear based on the status of the cases in which stays were granted involving § 1595(b)(1). In each of these cases, courts have required that Ferrer and Backpage notify the Court once their criminal cases were finalized.[2] To date, Ferrer and Backpage have filed no status reports suggesting that their criminal cases are closed.

---

https://www.justice.gov/opa/pr/us-department-justice-announces-compensation-process-victims-trafficked-through-backpagecom. Any applications by Plaintiffs for these funds, the adjudications of such applications, and the ultimate restitution payments may be relevant to all federal cases.

[2] *See* Ex. B at APP005, *Doe v. Backpage.com, LLC*, No. 3:23-CV-508 (N.D. Tex. Apr. 4, 2023), Dkt No. 9 ("Ferrer shall file an answer or other response to the complaint within 14 days of the conclusion of the criminal proceedings in the trial courts"); Ex. C at APP008, *Thompson v. Backpage.com, LLC*, No. 1:20-cv-06734-JGK (S.D.N.Y. Oct. 13, 2020), Dkt. No. 100 ("The parties shall notify the Court, in writing, of the final adjudication in the trial court of all the Pending Criminal cases, within thirty (30) days after the final adjudication of the last of the Pending Criminal Cases"); Ex. D at APP014, *Florida Abolitionist, Inc. v. Backpage.com LLC*, No. 6:17-CV-218 (M.D. Fla. Dec. 6, 2018), Dkt. No. 159 ("Defendant Ferrer shall file a status report within ten days of the conclusion of the criminal actions in the trial courts"); Ex. E at APP018, *Jane Doe No. 1 v. Backpage.com, LLC*, No. 1:17-CV-11069 (D. Mass. Nov. 30, 2018), Dkt. No. 100 (same). *Doe #14 v. Backpage.com LLC* had a similar requirement, but the case was dismissed four months after the stay was granted. *See* Ex. A at APP002–003, No. 3:20-CV-157 (N.D. Tex. Apr. 16, 2020), Dkt. No. 15 (requiring a response to the complaint within 21 days of the termination of the related criminal matters), Dkt. No. 17 (dismissing the case without prejudice).

*The Criminal Proceedings and This Action Arise From the Same Occurrence.* Cases "arise out of the same occurrence," where "one or more of the events that took place and gave rise to the claims in the plaintiffs' actions resembles in every relevant respect one or more of the events that gave rise to the charges in the indictment." *Fitzgerald*, 102 F.4th at 1099. In *Fitzgerald*, alleged sex trafficking victims filed a civil TVPRA action against one of their traffickers, and the government intervened to stay the litigation pending the resolution of a criminal action involving a different defendant—the alleged ringleader of the trafficking scheme. *Id.* at 1091. The Ninth Circuit rejected the argument that a stay is warranted only if the defendant in the civil action is a named defendant in the related criminal action. *Id.* at 1098. Although the civil action did not name the ringleader as a defendant, the court concluded that "the complaint alleges events that are identical to the events that gave rise to the claims in the indictment," and emphasized that the plaintiff's complaint "quotes the indictment's allegations" about the ringleader's trafficking scheme and affirmed the trial court's stay of civil proceedings. *Id.* at 1100.

The same is true here. The FAC details Backpage's alleged criminal enterprise and the subsequent government investigations into its business going as far back as 2008. FAC ¶ 82. According to Plaintiffs' FAC, under Lacey's watch, Backpage became the "unchallenged leader in online advertising for human trafficking and prostitution," and "continued to profit from exploitation." *Id.* ¶ 86. As noted above, Plaintiffs also refer to the "93-count, 61-page indictment," which likewise describes Lacey as overseeing "the website's policies and strategic direction." *Lacey*, 2:18-CR-00422, Dkt. No. 230 ¶ 2. And Plaintiffs' claims against Salesforce in this action are based in significant part on backpage.com's alleged wrongdoing. *Supra* at 2–5. Both the FAC and the *Lacey* indictment, also cited in the FAC, ¶ 95(f) at n.17, cite Craigslist's decision to shut down its "adult" section as an opening for Backpage to capture Craigslist's share of the market. *See* FAC ¶ 83 ("Craigslist in 2010 discontinued its 'adult' section … this was a turning point for Backpage.com"); *Lacey*, 2:18-CR-00422, Dkt. No. 230 ¶ 24 ("Craigslist chose to shut down its 'adult' section … the BACKPAGE DEFENDANTS, sensing an opportunity, made an aggressive push for Backpage to capture Craigslist's share of this market.").

Lacey's indictment confirms that Backpage's business model relied on the same commercial sex advertisements through which Plaintiffs allege they were trafficked. *See Lacey*, 2:18-CR-00422, Dkt. No. 230 ¶ 34 ("the BACKPAGE DEFENDANTS were aware that the overwhelming majority of the website's 'adult' and 'escort' ads were actually ads for prostitution"); *cf. e.g.*, FAC ¶¶ 11, 164–384 (alleging that Backpage "earned over 99% of its revenue from adult ads, a substantial percentage of which came directly from on-line prostitution and sex trafficking" and that each Plaintiff's trafficker "paid money to Backpage to post ads selling" each Plaintiff "for sex"). Thus, the FAC complaint confirms it "is based, at least in part, on the same occurrences that gave rise to the [Lacey] indictment," *Fitzgerald*, 102 F.4th at 1100–01, and this Court has found such parallels sufficient to require a mandatory stay, Ex. A at APP002, *Jane Doe #14 v. Backpage.com LLC*, 3:20-CV-0157-B, Dkt. 15 (Boyle, J.) ("Because Plaintiff's complaint relies, at least in part, on Defendants' alleged criminal conduct for which there are criminal actions pending … § 1595(b) mandates a stay in this case"); *see also* Ex. D at APP013–014, *Florida Abolitionist,* No. 6:17-CV-218 (finding stay justified where "Plaintiffs cite and rely heavily on the pending criminal matters" and "the nature of the allegations against Ferrer and Backpage.com in both this case and the criminal matters—involving sweeping systematic practices that allegedly harmed many victims in the same fashion—" justified a stay even where the plaintiffs were not named in the criminal cases).

*Each Plaintiff Alleges She Was a Victim of the Same Occurrence Out of Which the Criminal and Civil Suits Arise.* To satisfy this element, a civil plaintiff need only be a victim of the overall trafficking scheme that is the subject of the criminal case, though that criminal case need not involve a sex trafficking charge. *Doe*, 2022 WL 1569979, at *1. That means that a stay under 18 U.S.C § 1595 is mandatory if at least "some of the plaintiffs were victims in some of the same occurrences that gave rise to the criminal action." *Fitzgerald*, 102 F.4th at 1101. Both the FAC and the Lacey indictment detail at length Backpage's facilitation of online advertisements where individuals were being advertised for commercial sex. FAC ¶¶ 20, 106; *see generally Lacey*, No. 2:18-CR-00422, Dkt. No. 230. The FAC alleges that each Plaintiff's trafficker "paid

11

money to Backpage to post ads selling" each Plaintiff "for sex," that each Plaintiff's trafficking and compelled prostitution was "facilitated" and "made possible by the technology tools, operational support, and platform provided by Backpage and Salesforce," and that Backpage "used the Salesforce tools and technology to maintain both the details regarding the trafficking postings and the account information used to post the trafficking advertisements."  *See* FAC ¶¶ 162-384. Therefore, the FAC confirms that all Plaintiffs' claims arise, at least in part, from the same occurrences that gave rise to the pending criminal actions against the former Backpage employees and executives.

## CONCLUSION

Defendant Salesforce, Inc. respectfully requests the Court (1) grant this expedited motion and issue an order staying proceedings under 18 U.S.C. § 1595(b) until a final adjudication is reached in *United States v. Lacey*, Case No. 2:18-CR-00422 (D. Ariz. Mar. 28, 2018) and the related federal and state criminal proceedings, or (2) enter a ruling granting Salesforce's alternative expedited motion for temporary stay of Backpage-related discovery until this Court issues a ruling on Salesforce's motion to stay proceedings under 18 U.S.C. § 1595 on a normal briefing schedule. As to both forms of relief, Salesforce respectfully requests a ruling on or before August 14, 2025. Salesforce also respectfully requests that the Court vacate the trial date pending the resolution of Salesforce's motion for a § 1595(b) stay.

DATED:  August 8, 2025                    Respectfully submitted,

                                          *Gregg Costa*

                                          Gregg Costa (Tex. Bar No. 24028160)
                                            GCosta@gibsondunn.com
                                          GIBSON, DUNN & CRUTCHER LLP
                                          811 Main St., Suite 3000
                                          Houston, TX 77002
                                          Telephone: 346.718.6649

                                          John T. Cox III (Tex. Bar No. 24003722)
                                          Andrew LeGrand (Tex. Bar No. 24070132)
                                          GIBSON, DUNN & CRUTCHER LLP

12

2001 Ross Avenue, Suite 2100
Dallas, TX 75201
Telephone: 214.698.3100
Email:  TCox@gibsondunn.com
        ALeGrand@gibsondunn.com

Kristin A. Linsley
 (*admitted pro hac vice*)
  KLinsley@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: 415.393.8395

Attorneys for Defendant Salesforce, Inc.

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing Brief in Support of Expedited Motion to Stay Proceedings Pursuant to 18 U.S.C. § 1595 has been served on counsel of record pursuant to the Federal Rules of Civil Procedure.

*Gregg Costa*
Gregg Costa

Attorney for Defendant Salesforce, Inc.