# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| A.S., an individual,[1] | CIVIL ACTION NO. 3:23-cv-1039-B |
| *Plaintiff,* | Consolidated with: |
| | CIVIL ACTION NO. 3:23-CV-1040-B |
| v. | CIVIL ACTION NO. 3:23-CV-1042-B |
| | CIVIL ACTION NO. 3:23-CV-1044-B |
| SALESFORCE, INC., BACKPAGE.COM, | CIVIL ACTION NO. 3:23-CV-1045-B |
| LLC, and CARL FERRER, | CIVIL ACTION NO. 3:23-CV-1046-B |
| | CIVIL ACTION NO. 3:23-CV-1047-B |
| *Defendants.* | CIVIL ACTION NO. 3:23-CV-1048-B |
| | CIVIL ACTION NO. 3:23-CV-1049-B |
| | CIVIL ACTION NO. 3:23-CV-1050-B |
| | CIVIL ACTION NO. 3:23-CV-1051-B |
| | CIVIL ACTION NO. 3:23-CV-1052-B |
| | CIVIL ACTION NO. 3:23-CV-1056-B |
| | CIVIL ACTION NO. 3:23-CV-1057-B |
| | CIVIL ACTION NO. 3:23-CV-1058-B |
| | CIVIL ACTION NO. 3:23-CV-1059-B |
| | CIVIL ACTION NO. 3:23-CV-1071-B |
| | CIVIL ACTION NO. 3:23-CV-1110-B |
| | CIVIL ACTION NO. 3:23-CV-1122-B |
| | CIVIL ACTION NO. 3:23-CV-1352-B |
| | CIVIL ACTION NO. 3:23-CV-1353-B |

**PLAINTIFFS' RESPONSE TO MOTION BY DEFENDANT SALESFORCE, INC. TO STAY PROCEEDINGS PURSUANT TO 18 U.S.C. §§ 1595(b)**

---

[1] On June 20, 2023, the Court consolidated the following cases with the above entitled cause: 3:23- CV-1040-B; 3:23-CV-1042-B; 3:23-CV-1044-B; 3:23-CV-1045-B; 3:23-CV-1046-B; 3:23-CV-1047-B; 3:23-CV1048-B; 3:23-CV-1049-B; 3:23-CV-1050-B; 3:23-CV-1051-B; 3:23-CV-1052-B; 3:23-CV-1056-B; 3:23-CV1057-B; 3:23-CV-1058-B; 3:23-CV-1059-B; 3:23-CV-1071-B; 3:23-CV-1110-B; 3:23-CV-1122-B; 3:23-CV1352-B; 3:23-CV-1353-B. See Doc. 11, Mem. Op. & Order, 5–7. This case was designated as the lead case. *Id.* at 6.

1

To The Honorable Judge of Said Court:

Plaintiffs A.S., et al., file this Response to Defendant Salesforce, Inc.'s Motion to Stay Proceedings Pursuant to 18 U.S.C. §§ 1595(b) and 3509(k) (Dkt. 146, the "Motion to Stay"), and respectfully show the Court as follows:

## Overview

This action has been pending since May 2020. On May 23, 2025, Plaintiffs filed an Amended Complaint as ordered by this Court (Dkt. 110), and Salesforce filed a motion to dismiss (Dkt. 123) on June 20, 2025, which this Court has yet to rule upon. Salesforce also filed a Motion to Expedite the Ruling of this Motion by August 14, 2025, which this Court denied in an Order dated August 12, 2025 (Dkt. 148).

After five years of litigation, Salesforce now seeks to halt all proceedings under the TVPRA's stay provision, 18 U.S.C. §§ 1595(b) and 3509(k). Defendant contends that "[t]his Court previously stayed a similar action under the TVPRA's mandatory stay provision." (Dkt. 146 at 2.) But the circumstances that gave rise to that previous stay are markedly different.  In *Jane Doe #14 v. Backpage.com, LLC*, No 3:20-CV-0157 (N.D. Tex. April 16, 2020), the only Defendants in the civil lawsuit were the also Defendants in the criminal proceedings.  Here, Salesforce is not a criminal defendant in any known proceeding.  The statutory requirements for a stay under § 1595(b)(1) are clear: (1) a criminal trial must exist; (2) the criminal prosecution must arise from the *same occurrence* as the civil action; **and** (3) the victim in the criminal case must be the same individual as the plaintiff in the civil case.

Notably, the criminal case Salesforce attempts to rely on to now stay this matter has existed since before the inception of this litigation. Here, Plaintiffs are not the subject victims in those

2

prosecutions. Because neither the "same occurrence" nor the "same victim" elements are satisfied, Defendant's motion fails as a matter of law.

Additionally, Salesforce's belated request for a stay based on the stated criminal proceedings is untimely and subject to waiver. The criminal prosecutions on which Salesforce relies have been pending for more than seven years, while this civil action has been actively litigated for over five years. The stay Salesforce attempts to rely upon as a "similar action" was granted over five years ago. At no point during that period did Salesforce seek a stay in this case. Its unexplained delay reflects pure gamesmanship, has prejudiced Plaintiff, and renders a stay no more warranted now than at any earlier stage of this case. Indeed, Salesforce has litigated this and other matters through extensive motion practice and even in appellate proceedings before the Fifth Circuit and Seventh Circuit. Only now—after years of active participation, with discovery well underway and trial finally set for next year—does Salesforce seek to halt these proceedings based on criminal cases that have long been pending, and in many instances have already concluded.

Finally, the Fifth Amendment privilege asserted by witnesses facing potential liability under 18 U.S.C. § 1591 is not temporary or fleeting; it endures so long as criminal exposure exists. Salesforce's attempt to pause this civil trafficking case rests only on its desire to prevent the case from getting to trial.

## Legal Standard

Courts have emphasized that § 1595(b) was enacted to protect victims and the government's ability to prosecute traffickers, not to shield civil defendants from liability. *Jane Does 1–9 v. Murphy*, 2023 WL 2423113, at *3 (D.S.C. Mar. 9, 2023). Civil defendants must therefore meet a heightened evidentiary burden. *See Doe v. Fitzgerald*, 2022 WL 18110021, at *4

(noting lower burden when government seeks stay because statute is designed to protect criminal prosecutions).

Salesforce relies heavily on the Ninth Circuit opinion in *Doe 1–10 v. Fitzgerald*, 102 F.4th 1089, 1099 (9th Cir. 2024), which construed the "same occurrence" requirement narrowly, holding that "one or more of the events that took place and gave rise to the claims in the plaintiffs' action resembles in every relevant respect one or more of the events that gave rise to the charges in the indictment." However, as Fitzgerald itself makes clear, mere factual overlap between civil allegations and criminal charges is insufficient to justify a stay. In *Fitzgerald*, the district court's stay was predicated on government intervention, specifically on the government's indictment that identified co-conspirators, including Fitzgerald. No comparable circumstances exist here. Other federal courts have consistently held the same way. *See, e.g.*, *Bradberry v. Abercrombie & Fitch Co.*, No. 1:23-cv-9440, 2024 WL 4604508, at *3 (S.D.N.Y. Oct. 28, 2024) (stay requires civil and criminal cases to "closely parallel" one another); *Doe v. Aylo Global Entertainment Inc.*, 2023 WL 8884400, at *3 (C.D. Cal. Nov. 29, 2023) (similar-sounding allegations are insufficient; defendant must prove actual overlap and prejudice from civil discovery); and *Tianming Wang v. Gold Mantis Constr. Decoration (CNMI), LLC*, 2020 WL 5983939, at *2–5 (D. N. Mar. I. Oct. 9, 2020) (no stay where civil action alleged TVPRA violations but criminal case involved fraud).

By contrast, courts that have granted stays did so **only** where the civil and criminal cases involved **identical conduct and victims**. *See Nesbitt v. Bemer*, 2018 WL 5619716 (D. Conn. Oct. 30, 2018) (plaintiff admitted his case arose from same facts as criminal indictment); and *Doe v. Mindgeek USA Inc.*, 2021 WL 6618628 (C.D. Cal. Dec. 28, 2021) (criminal defendant charged with child pornography was the same trafficker alleged in civil TVPRA claims).

4

Here, Salesforce has not met this burden. It has not shown that Plaintiffs' claims arise from the same occurrence as the Arizona criminal proceedings, nor that Plaintiffs are victims in those cases.

**Argument and Authorities**

**A.  There are No Relevant Criminal Charges Pending**

The federal sex trafficking statute—the Trafficking Victims Protection Reauthorization Act ("TVPRA")—provides for criminal liability under 18 U.S.C. § 1591 and civil liability under 18 U.S.C. § 1595. Nothing in its text or history supports extending a stay to unrelated prosecutions involving different named parties and different statutes, but the legislative history of the TVPRA suggests to the contrary.

The civil remedy provision of 18 U.S.C. § 1595 was created by the Trafficking Victims Protection Reauthorization Act of 2003 (TVPRA 2003), Pub. L. No. 108-193, which "refined federal criminal provisions against trafficking, to include adding human trafficking crimes as a Racketeer Influenced and Corrupt Organizations Act (RICO) predicate, and created a civil remedy enabling trafficking victims to file lawsuits against their traffickers in federal district court.  The creation of the available stay and the increased focus of criminal prosecution was not by chance. The stay provision was incorporated into the TVPRA to enable the prioritization of the criminal prosecutions of trafficking cases ahead of civil prosecutions.  By permitting the Government or the victim to stay the pending civil matter to prioritize the criminal matter Congress ensured a comprehensive accountability strategy would be implemented to fight trafficking.  None of the Congressional motivations for the stay provision are present or applicable to Salesforce.

Defendant's attempt to use those proceedings as a basis to bar and further delay Plaintiffs from prosecuting their civil TVPRA claims is unfounded and contrary to the statute and its legislative intent.

### B.  The Pending Criminal Proceedings Do Not Arise From the Same Occurrence

Defendant's reliance on the Arizona prosecutions of Backpage associates is fundamentally misplaced. Plaintiffs' claims arise under 18 U.S.C. § 1595 for Salesforce's knowing participation in and facilitation of Backpage's sex trafficking venture. This case does not "closely parallel" the pending Arizona case, as required by *Bradberry v. Abercrombie & Fitch Co.*, 2024 WL 4604508, at *3 (S.D.N.Y. Oct. 28, 2024), and thus cannot support a stay. Nor do they arise from the "same occurrence." Plaintiffs allege they were sex trafficked on Backpage.com during a period when Salesforce actively facilitated that venture.

Defendant's reliance on *Doe 1–10 v. Fitzgerald*, 102 F.4th 1089, 1099 (9th Cir. 2024), is similarly misplaced. Instead, the *Fitzgerald* decision is particularly instructive in delineating the reach of the TVPRA's stay provision, is consistent with the legislative intent of the stay provision, and in fact directly supports Plaintiffs' position. In that matter, two alleged sex traffickers, Nygard and Fitzgerald, were involved; however, only Nygard had been indicted for sex trafficking, while Fitzgerald had not. Ten plaintiffs instituted a civil action against Fitzgerald pursuant to 18 U.S.C. § 1595. The United States thereafter intervened and sought to stay the civil proceedings pending resolution of the criminal prosecution against Nygard. The district court granted the stay, and Fitzgerald appealed.  Specifically, the plaintiffs alleged that "they are victims of trafficking as a result of conspiracy between Fitzgerald, Nygard, and others." *Doe*, 102 F.4th n.3. On that record, the court concluded: "Comparing the Plaintiffs' complaint and the Nygard indictment here, we

conclude that the complaint alleges events that are identical to the events that gave rise to the claims in the indictment." *Id.* at 1100.

Defendant also mischaracterizes an order by the Honorable Judge Nancy Boyle of the Northern District of Texas, suggesting that "this Court has found such parallels sufficient to require a mandatory stay." (Dkt.146 at 11.) In fact, that order concerned an *unopposed* motion to stay a case naming specifically Backpage.com and its CEO—both of whom were active defendants in ongoing criminal prosecutions at the time of that motion. The situation here is markedly different: neither Salesforce nor these Plaintiffs are parties or witnesses to the Arizona criminal case, and the charges in that matter do not involve sex trafficking or the TVPRA. Defendant has failed to satisfy the statutory requirements, and its motion should be denied.

### C.  Plaintiffs Are Not Named Victims in the Arizona Prosecution Case

Defendant argues that Plaintiffs need only be "victim[s] of the overall trafficking scheme" underlying the criminal case, even if the criminal case does not involve sex trafficking charges. (Dkt. 81 at 11.) For this proposition, Defendant relies on an unpublished decision, *Doe v. Athens Cnty.*, 2022 WL 1569979 (S.D. Ohio May 18, 2022). That reliance is misplaced, because the holding in *Athens* does not support Defendant's argument.

In *Athens*, the plaintiff alleged repeated sexual abuse by her brothers, Josiah and Jonathan Bellar, and a county cover-up of that abuse. One brother, Jonathan, was criminally indicted. Although Jonathan was not a named defendant in the civil case, the civil complaint explicitly alleged systemic sexual abuse by both brothers, and the plaintiff herself was the victim in both the civil and criminal proceedings. The court concluded that § 1595(b)(1) applied because the criminal prosecution of Jonathan Bellar arose out of the same conduct as the plaintiff's civil claims and involved the same victim. *Id.* at *2.

The contrast with this case is stark. The federal prosecution pending in Arizona does not specifically reference or include these Plaintiffs. Because there is neither a common victim nor a common occurrence, the statutory prerequisites for a stay are not met.

Accordingly, Defendant's reliance on *Athens* is improper, and its Motion to Stay should be denied.

### D.  Salesforce Cannot Misuse a Third-Party Witness's Fifth Amendment Privilege

Salesforce contends that a stay is necessary to "ensure fairness" and to avoid prejudice from "claimed inferences" Plaintiffs may ask the Court to draw from a third-party witness's invocation of the Fifth Amendment. (Dkt. 81 at 4.) In reality, Defendant seeks to appropriate another individual's constitutional protection for its own strategic benefit when established procedural mechanisms already exist to address a 5th amendment invocation (especially as here, from a non-party witness). This effort is improper and should be rejected.

The law is clear that even when a civil litigant invokes their **own** Fifth Amendment privilege, a stay does not automatically follow. In *U.S. v. Lot 5, Fox Grove*, 23 F.3d 359 (11th Cir. 1994), the Eleventh Circuit held that "a blanket assertion of the privilege is an inadequate basis for the issuance of a stay." *Id*. at 364. Likewise, in *Plaintiffs A v. Schair*, 744 F.3d 1247, 1254-55 (11th Cir. 2014), the court declined to intervene when a defendant argued that the lifting of a § 1595(b) stay would expose him to adverse inferences in a civil case while criminal charges were pending. These cases establish that even the party invoking its own privilege is not automatically entitled to suspend a civil proceeding.

Here, Salesforce's argument is even weaker. Salesforce does not assert its own privilege but instead attempts to weaponize a third-party witness's invocation of the Fifth Amendment. The Supreme Court has long held that "[i]t is settled that a corporation is not protected by the

constitutional privilege against self-incrimination." *Curcio v. United States*, 354 U.S. 118, 122 (1957); *see also United States v. John Doe*, 104 S. Ct. 1237, 1240 (1984). Salesforce therefore lacks any constitutional right to assert, and its reliance on another non-party individual's privilege as a shield in civil litigation is improper.

Moreover, the invocation of the Fifth Amendment is not temporary. Witnesses facing exposure under 18 U.S.C. § 1591 will remain subject to criminal liability indefinitely; their assertion of the privilege will not evaporate with the resolution of other pending proceedings. Salesforce's position is no more than dissatisfaction with the evidentiary consequences of a third party's assertion of their own Constitutional right. That is not a lawful basis for halting a civil trafficking case.

### Conclusion and Prayer

The statutory requirements for a stay under § 1595(b)(1) are not met. Salesforce has shown only that a criminal prosecution exists—but not that it arises from the same occurrence, nor that Plaintiffs are victims in that prosecution. Federal courts interpret these requirements narrowly, consistent with legislative intent to protect victims and prosecutions, not civil defendants.

WHEREFORE, Plaintiffs respectfully request that Defendant's Motion to Stay be denied in its entirety, and for such other and further relief to which they may be justly entitled.

Respectfully submitted,

By: */s/ Annie McAdams*
    Annie McAdams
    Attorney-in-Charge
    Texas Bar No. 2405104
    S.D. Tex. No. 1514589
    ANNIE MCADAMS PC
    2900 North Loop W Ste 1130
    Houston, TX 77092
    Telephone: (713) 785-6252
    Facsimile: (888) 713-0451
    annie@mcadamspc.com

By: */s/ David Harris*
    David E. Harris
    Texas Bar No. 24049273
    S.D. Tex. No. 712461
    Craig M. Sico
    Texas Bar No. 18339850
    S.D. Tex. No. 13540
    SICO HOELSCHER HARRIS LLP
    819 N. Upper Broadway
    Corpus Christi, Texas 78401
    Telephone: (361) 653-3300
    Facsimile: (361) 653-3333
    dharris@shhlaw.com
    csico@shhlaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 29th day of August 2025, a true and correct copy of the above and foregoing document was served upon the following counsel of record via the Court's electronic filing system in accordance with the Federal Rules of Civil Procedure.

*/s/ David E. Harris*