UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| A.S., an individual,[1] § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 3:23-CV-1039-B |
| § | |
| SALESFORCE, INC., BACKPAGE.COM, § | |
| LLC, and CARL FERRER, § | |
| § | |
| § | |
| Defendants. § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Salesforce Inc.'s Motion to Stay Proceedings Pursuant To 18 U.S.C. § 1595(b) (Doc. 145),[2] which is opposed by Plaintiffs. The Court **GRANTS** the Motion and **STAYS** the case pending the resolution of the conspiracy to facilitate prostitution count in *United States v. Lacey*, No. 2:18-cr-0422 (D. Ariz.) (the "Lacey Action").

I.

BACKGROUND

Plaintiffs in this consolidated case allege that they were victims of sex trafficking on Defendant Backpage.com, LLC ("Backpage")'s website and that Salesforce knowingly played a pivotal role and benefitted from the illicit activity. Plaintiffs assert, among other causes of action,

---

[1] On June 20, 2023, the Court consolidated the following cases with the above entitled cause: 3:23-cv-1040-B; 3:23-cv-1042-B; 3:23-cv-1044-B; 3:23-cv-1045-B; 3:23-cv-1046-B; 3:23-cv-1047-B; 3:23-cv-1048-B; 3:23-cv-1049-B; 3:23-cv-1050-B; 3:23-cv-1051-B; 3:23-cv-1052-B; 3:23-cv-1056-B; 3:23-cv-1057-B; 3:23-cv-1058-B; 3:23-cv-1059-B; 3:23-cv-1071-B; 3:23-cv-1110-B; 3:23-cv-1122-B; 3:23-cv-1352-B; 3:23-cv-1353-B. *See* Doc. 11, Mem. Op. & Order, 5–7; *see* Doc. 18, Order. This case was designated as the lead case. *Id.* at 6.
[2] Salesforce also requested expedited consideration and alternative limited relief. *See* Doc. 145, Mot., 2. The Court denied both requests in a prior order. *See* Doc. 148, Order.

-1-

that Defendants violated the Trafficking Victims Protection Reauthorization Act (the "TVPRA"), which creates civil liability for sex trafficking. The statute mandates a stay of any TVPRA civil action when "any criminal action arising out of the same occurrence in which the claimant is the victim" is pending. 18 U.S.C. § 1595(b)(1). Seeking to enforce this provision, Salesforce points to several related criminal proceedings. The question presented here is whether the related criminal actions meet the criteria for a mandatory stay under § 1595(b)(1).

    A.    *Plaintiffs' Civil Lawsuit*

According to the Corrected First Amended Complaint ("FAC"), each of the Plaintiffs was "sold for sex acts by force, fraud, or coercion" on Backpage's website by individual traffickers all over the country. Doc. 110, FAC ¶¶ 162–384. The FAC alleges that Backpage was fully aware that its website was used to prostitute unwilling victims and "intentionally facilitated that illegal conduct in order to maximize its profits." *Id.* ¶ 93. Salesforce allegedly "provided ongoing, personalized operational support for the technology, tools, and instruments that made it possible for Backpage to engage in the internet-based, online selling of sex, sex trafficking, and compelled prostitution, including trafficking of Plaintiffs." *Id.* ¶ 133. Among its other causes of action arising under Texas law, the FAC asserts that Backpage, Backpage's CEO Carl Ferrer, and Salesforce are liable for violating the TVPRA. *Id.* ¶¶ 388–92, 403–07.

The FAC references the Lacey Action, along with state and federal actions wherein certain defendants pleaded guilty. *See id.* ¶¶ 95–98. In one guilty plea, Ferrer and Backpage "conceded Backpage's dominant role in the promotion of commercial sex," which Plaintiffs labeled as "relevant to the current lawsuit." *Id.* ¶ 96.

B.     *The Related Criminal Proceedings*

Salesforce argues that this action should be stayed pending final adjudication of the Lacey Action and "other[] [actions] brought against defendant Carl Ferrer and other former officers and employees of defendant Backpage.com, LLC." Doc. 145, Mot., 2. Besides the Lacey Action, Salesforce in its brief identifies five other criminal actions: *United States v. Backpage.com, LLC*, No. 2:18-cr-0465 (D. Ariz) (the "Backpage Action"); *United States v. Hyer*, No. 2:18-cr-0422-05 (D. Ariz) (the "Hyer Action"); *United States v. Ferrer*, No. 2:18-cr-0464 (D. Ariz.) (the "Ferrer Action"); *People v. Lacey*, No. 16FE024013 (Sacramento Super. Ct.); and *People v. Ferrer*, No. 16FE024013 (Sacramento Super. Ct.). *See* Doc. 146, Br. Mot., 7–9. Final judgments have been issued and sentences imposed in the Backpage, Hyer, and Ferrer Actions. *See* Backpage Action, ECF Nos. 187–93; Doc. 163, Reply, 3 n.2. That leaves as active the Lacey Action and the two California state court actions—*People v. Lacey* and *People v. Ferrer*.[3]

1.     The Lacey Action

In the Lacey Action, several Backpage directors and officers were accused of being aware that Backpage's website was used for prostitution and sex trafficking and taking steps to "intentionally facilitate that illegal activity." Superseding Indictment ¶¶ 2–14, Lacey Action (July 25, 2018), ECF No. 230. Through these steps, Backpage became the "the internet's leading source of prostitution advertisements." *Id.* ¶ 1.

No victims are identified by name in the Superseding Indictment, but it provides anonymized examples of apparent sex trafficking victims throughout and provides seventeen

---

[3] In its Reply, Salesforce also notes that a criminal case against Ferrer is pending in Texas but provides no further information about such case. Doc. 163, Reply, 3 n.2. Without any additional facts of the Texas case, the Court declines to consider whether its pendency necessitates a stay.

anonymized "select victim summaries" describing sex trafficking through Backpage's website all over the country. *See id.* ¶¶ 160–76. Plaintiffs represent, and Salesforce does not dispute, that the Lacey Action "does not specifically reference or include" Plaintiffs as victims. Doc. 150, Resp., 8; *see* Doc. 163, Reply, 8–9.

The indictment in the Lacey Action, incorporating all previous paragraphs, charges the defendants with conspiracy to facilitate prostitution. Superseding Indictment ¶¶ 195–99, Lacey Action, ECF No. 230. The Lacey Action also charges the defendants with fifty counts of facilitating prostitution, referencing with each count specific advertisements published on Backpage's website. *See id.* ¶¶ 200–01. The referenced advertisements involve the anonymous victims earlier mentioned in the complaint. *See id.* Salesforce has not suggested that any of the referenced advertisements in the fifty counts of prostitution included the Plaintiffs here.

The remaining forty-nine counts are for various forms of money laundering. *See id.* ¶¶ 202–11. These money laundering counts do not reference the prostitution victims but instead reference specific financial transactions involving the proceeds of criminal activity. *See id.*

To date, the unresolved portion of the Lacey Action at the trial court level is the retrial of Michael Lacey, a co-creator of Backpage, on several charges for which the jury was previously unable to reach a verdict. *See* United States' Notice of Retrial at 2, Lacey Action (Jan. 23, 2024), ECF No. 2035 (providing notice of intent to retry on 84 charges); Amended Judgment of Acquittal, Lacey Action (Apr. 26, 2024), ECF No. 2084 (acquitting and discharging Lacey as to 50 of the counts intended for retrial). The charges subject to retrial include the count for conspiracy to facilitate prostitution, several of the counts for facilitating prostitution, and several of the money laundering counts. *See id.*

The retrial has not yet been scheduled. *See* Order, Lacey Action (Sept. 9, 2024), ECF No. 2202. The trial court indicated that it will schedule retrial after a decision by the Ninth Circuit on Lacey's appeal of his conviction on one money laundering charge. *See id.*

### 2. California State Court Actions

Much less information is available to the Court regarding the two California state criminal cases, *People v. Lacey* and *People v. Ferrer*. Salesforce provides the docket for the *People v. Lacey* case, which now reflects hearings scheduled for April 17, 2026, on various motions. Doc. 146, Br. Mot., 9.[4] But the docket does not provide any information about the charges and victims in *People v. Lacey*. *See* Doc. 155, App. Mot., Ex. L, 64–69. A criminal filing by the United States describes *People v. Lacey* as "related" to the Ferrer Action but says: "While that case involves Backpage, it is based on a different theory of liability involving the company's credit card processing practices." Motion to Continue Sentencing at 1, Ferrer Action (Jan. 30, 2025), ECF No. 155.

Salesforce also provides the docket for *People v. Ferrer*, which indicates a judgment and sentencing hearing is scheduled for April 17, 2026, but provides no details on the charges and victims in the case. *See* Doc. 155, App. Mot., Ex. K, 58–62.[5]

## II.

## LEGAL STANDARD

"Any civil action filed under [18 U.S.C. § 1595(a)] shall be stayed during the pendency of any criminal action arising out of the same occurrence in which the claimant is the victim."

---

[4] Based on the URL provided for the *People v. Lacey* docket in Salesforce's appendix (Doc. 155, App. Mot., Ex. L, 64–69), these hearings have been rescheduled from October 3, 2025, to April 17, 2026, since the time when Salesforce filed its Motion.

[5] As with the *People v. Lacey* case, the docket for *People v. Ferrer* reflects that the hearing has been rescheduled to April 17, 2026, since the time when Salesforce filed its Motion.

18 U.S.C. § 1595(b)(1). This provision comprises three elements: "(1) a criminal action or investigation is pending; (2) the criminal action arises 'out of the same occurrence' as the civil action; and (3) the plaintiff in the civil action is the victim of an occurrence that is the same in the civil and criminal proceedings." *Doe 1-10 v. Fitzgerald*, 102 F.4th 1089, 1098 (9th Cir. 2024) (citing § 1595(b)(1)), *cert. denied sub nom. Fitzgerald v. U.S. Att'y's Office, S. Dist. of N.Y.*, 145 S. Ct. 378 (2024).

Under the statute, "a 'criminal action' includes investigation and prosecution and is pending until final adjudication in the trial court." § 1595(b)(2). Such criminal action arises out of the same occurrence when "one or more of the events that took place and gave rise to the claims in the plaintiffs' action resembles in every relevant respect one or more of the events that gave rise to the charges in the indictment." *Fitzgerald*, 102 F.4th at 1099. This second element is satisfied even if there is no overlap in defendants between the civil and criminal actions and even if the criminal action does not include a charge under the TVPRA. *See Doe v. Mindgeek USA Inc.*, No. SACV 21-00338-CJC(ADSx), 2021 WL 6618628, at *3 (C.D. Cal. Dec. 28, 2021); *Doe v. Athens Cnty.*, No. 2:22-cv-00855, 2022 WL 1569979, at *1 (S.D. Ohio May 18, 2022).

As to the third element, imposing a stay requires that "some of the plaintiffs were victims in some of the same occurrences that gave rise to the criminal action." *Fitzgerald*, 102 F.4th at 1101; *see Mindgeek*, 2021 WL 6618628, at *3 ("Simply put, § 1591(b) requires that a civil action be stayed if the victim of the criminal action is the same as the claimant in the civil action[.]"). The plaintiffs need not be specifically named as victims in the criminal complaint in a case "involving sweeping, systematic practices that allegedly harmed many victims in the same fashion." *See* Order at 3, *Fla. Abolitionist, Inc. v. Backpage.com LLC*, No. 6:17-cv-00218-JA-E K (M.D. Fla. Dec. 6, 2018), ECF No. 159.

To decide whether the three elements are met, the Court compares the pleadings in the civil and criminal actions and may also consider any proffered evidence. *See Fitzgerald*, 102 F.4th at 1099. If the elements are met, the mandatory stay applies to the entire civil case. *See id.* at 1101; *see also* Order at 1, *Jane Doe #14 v. Backpage.com LLC*, No. 3:20-cv-0157-B (N.D. Tex. Apr. 16, 2020) (Boyle, J.), ECF No. 15.

### III.

### ANALYSIS

The Lacey Action satisfies all three elements required for a mandatory stay under § 1595(b)(1). In contrast, the Backpage, Hyer, and Ferrer Actions are no longer "pending" within the meaning of the statute, and not enough information has been provided about the *People v. Lacey* and *People v. Ferrer* cases to support a stay. Thus, the Court imposes a stay of this case based on the Lacey Action.

    A.    *The TVPRA mandates a stay based on the Lacey Action but not the other criminal actions.*

        1.    <u>The Lacey Action</u>

The Lacey Action satisfies all three elements for a mandatory stay. First, it is currently "pending" within the meaning of the TVPRA since final adjudication has not been reached on several of the charges against Lacey. *See* § 1595(b)(2); Order, Lacey Action (Sept. 9, 2024), ECF No. 2202 (discussing retrial on Lacey's "pending charges").

Second, the Lacey Action arises out of the same occurrence as this civil action. This element is met when "one or more of the events that took place and gave rise to the claims in the plaintiffs' action resembles in every relevant respect one or more of the events that gave rise to the charges in the indictment." *Fitzgerald*, 102 F.4th at 1099. Here, the FAC alleges a series of facts involving

Backpage's knowing facilitation of commercial sex activity that are identical to those which gave rise to the charges in the Lacey Action. *See* Doc. 110, FAC ¶ 93; Superseding Indictment ¶¶ 1–14, Lacey Action. Although this civil action adds allegations of Salesforce's involvement, that addition does not negate that there is a core factual overlap with respect to Backpage's conduct. The fact that the FAC references the Lacey Action, while not necessarily dispositive on its own, supports the finding that both actions arise out of the same occurrence. *See* Doc. 110, FAC ¶ 95; *Fitzgerald*, 102 F.4th at 1100–01 (finding that civil complaint's extensive quotation of criminal indictment established that the two were at least partially based on the same occurrences).

Plaintiffs cite legislative history to argue that the pending criminal charges are only relevant if they are criminal sex trafficking charges under the TVPRA against identical defendants. *See* Doc. 150, Resp., 5. Whatever the legislative history might suggest, the statute itself contains no such limitation, and courts have issued the mandatory stay where there is no defendant in common between the civil and criminal actions and the criminal charges are not under the TVPRA. *See Athens Cnty.*, 2022 WL 1569979, at *1 (staying civil TVPRA action where criminal and civil actions had different defendants and sole criminal charge was under state law); *see also Fitzgerald*, 102 F.4th at 1099 (citation omitted) ("Given that § 1595(b)(1) refers only to the identity of victims, not of perpetrators, we cannot read Fitzgerald's proposed fourth requirement into the statute.").

Finally, the third element is met because the Plaintiffs here overlap with the victims of at least one active count in the Lacey Action. The statute requires that "the claimant is *the* victim" in the criminal action. § 1595(b)(1) (emphasis added); *see Mindgeek*, 2021 WL 6618628, at *3. Contrary to Salesforce's argument, this requirement is not satisfied by showing that a plaintiff is "a victim of the overall trafficking scheme that is the subject of the criminal case." Doc. 145, Mot.,

11. The Court must apply the statute exactly as written, and the statute does not generalize to the scheme but specifically requires that a plaintiff here is one of "the" victims in the criminal case. § 1595(b)(1). Other courts have applied the statute in the same manner. *See, e.g.*, *Athens Cnty.*, 2022 WL 1569979, at *1 (staying civil case where plaintiff was identified as alleged victim in related criminal action); *Fitzgerald*, 102 F.4th at 1101 (staying civil case where seven plaintiffs allegedly overlapped with victims in criminal action).

Notwithstanding this strict plaintiff-victim identity requirement, the statute does not require that the victim is specifically named or identified in the criminal indictment. For example, in the *Florida Abolitionist* case, the court rejected the argument that a stay should not issue simply because no plaintiff in the civil action "[was] alleged to be a victim in the pending criminal cases." Order at 3, *Fla. Abolitionist*, No. 6:17-cv-0218-JA-E K. The court instead noted that "the nature of the allegations against Ferrer and Backpage.com in both this case and the criminal matters—involving sweeping, systematic practices that allegedly harmed many victims in the same fashion—renders the situation at hand unique." *Id.* Persuaded by the plaintiffs' heavy reliance on the criminal matters to describe the defendants' conduct, the court found a stay warranted. *Id.* at 3–4.

The court in *Florida Abolitionist*, while correct in its suggestion that the statute does not require that a plaintiff in a civil action is named or anonymously identified as a victim, did not consider whether any plaintiff was included among the victims, despite not being named or referenced specifically.[6] Even if not named or referenced, the victims must include at least one of the plaintiffs to satisfy the third element. *See* § 1595(b)(1).

---

[6] A likely reason that the court in *Florida Abolitionist* did not conduct this specific step of analysis under the mandatory stay provision is that it found a stay appropriate as a matter of discretion. *Id.* at 4.

Here, the only criminal count where the Plaintiffs are included among "the victims" is the charge for conspiracy to facilitate prostitution. That count, incorporating all previous paragraphs, is based on the facts of Backpage's broad conspiracy to facilitate prostitution nationwide. *See* Superseding Indictment ¶¶ 195–99, Lacey Action. Although the Superseding Indictment references only some victims, the indictment calls the references "select victim summaries," suggesting that all who fell prey to the defendants' scheme are included among the victims of the conspiracy. *See id.* ¶¶ 160–76.

The individual counts for facilitation of prostitution, on the other hand, reference specific advertisements involving specific victims in each count. *See id.* ¶¶ 200–01. The Court has no basis before it to conclude that Plaintiffs here are among those specific victims. Likewise, the money laundering counts do not reference victims at all but instead involve financial crimes associated with the proceeds of criminal activity. *See id.* ¶¶ 202–11. Thus, the only charge where Plaintiffs here overlap with the victims in the Lacey Action is the count for conspiracy to facilitate prostitution. Such overlap is sufficient to satisfy the third element required for a mandatory stay.

### 2.   Other Criminal Actions

The other criminal actions Salesforce has presented do not warrant a stay. The Backpage, Hyer, and Ferrer Actions fail at element one—they are no longer "pending" because final adjudications have been reached in all three. *See* Backpage Action, ECF Nos. 187–93; Doc. 163, Reply, 3 n.2. The two California state cases—*People v. Lacey* and *People v. Ferrer*—are still pending. *See* Doc. 145, Mot., 9. But the indictments in those cases have not been made available to the Court, and the limited information provided does not allow the Court to determine whether those cases arise out of the same occurrence as this case or whether there is any overlap between the

victims there and the Plaintiffs here.[7] Because the facts presented are insufficient for the court to conclude that the second and third mandatory stay elements are satisfied with respect to the California state cases and because a stay is mandated based on the Lacey Action anyways, the Court will not consider the California state cases at this time. Should the stay imposed based on the Lacey Action be lifted and either of the two California state cases remain pending at that point, the parties may present further information necessary for the Court to determine whether any still pending case requires a continued stay.

>   B.   *The mandatory stay applies to this entire civil case until the conspiracy to facilitate prostitution charge in the Lacey Action is resolved.*

Plaintiffs make three other arguments to avoid a stay here: (1) based on legislative history, only a victim or the Government can request a stay, (2) Salesforce waived its ability to argue for a stay by delaying its filing, and (3) Salesforce is attempting to protect a third party's Fifth Amendment privilege against self-incrimination. *See* Doc. 150, Resp., 3, 5, 8–9. The Court cannot consider these arguments because § 1595(b)(1) requires that the Court stay the case when its requirements are met. The statute does not limit who can seek the stay, indicate that a party can waive a right to a stay by not requesting it sooner, or give a court discretion to consider why a party has requested a stay.

As the elements for imposing a mandatory stay are met, the Court is required to impose a stay as to this entire case. *See Fitzgerald*, 102 F.4th at 1101; *see also* Order at 1, *Jane Doe #14*, No. 3:20-cv-0157-B. Since the only charge supporting the stay is the count for conspiracy to facilitate

---

[7] The little information provided suggests that *People v. Lacey*, while "related," involves a "different theory of liability involving the company's credit card practices." Motion to Continue Sentencing at 1, Ferrer Action. Thus, *People v. Lacey* might not arise out of the same general scheme to facilitate sex trafficking and prostitution but might involve different wrongdoing by the same individuals against entirely different victims.

prostitution in the Lacey Action, the requirements of the mandatory stay provision will no longer be satisfied upon final adjudication of that count.

### IV.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** a stay in this case pending the resolution of the count for conspiracy to facilitate prostitution in the Lacey Action. The parties are **ORDERED** to submit to the Court a joint status report regarding the Lacey Action and this civil case every **120 DAYS**, starting with February 18, 2026. The parties are also **ORDERED** to file a joint status report within ten days after final adjudication by the trial court on the count for facilitation of prostitution in the Lacey Action, which joint status report should identify pending motions and suggest deadlines for outstanding activity needed to proceed with the case. The Clerk is directed to administratively close the case.

SO ORDERED.

SIGNED: October 21, 2025.

_____
JANE J. BOYLE
SENIOR UNITED STATES DISTRICT JUDGE